**Leonard LAWTON et al., Appellants,**

**v.**

**The CITY OF AUSTIN et al., Appellees.**

**No. 11406.**

Court of Civil Appeals of Texas.

Austin.

June 15, 1966.

Rehearing Denied July 6, 1966.

Sneed & Vine, Houghton Brownlee, Jr., Forrest N. Troutman, Austin, for appellants.

Johnson, Jones & Sheppard, Paul D. Jones, Pearce Johnson, Austin, Clark, West, Keller, Clark and Ginsberg, William L. Keller, Allen Butler, Dallas, Doren R. Eskew, City Atty., H. Glenn Cortez, Asst. City Atty., Brown, Sparks & Erwin, Will G. Barber, Austin, for appellees.

HUGHES, Justice.

Earl L. Dolifka, J. E. Berryman and Leonard Lawton, appellants, by an amended pleading sued the City of Austin, Safeway Stores, Inc., Nash Phillips, Clyde Copus and R. B. Lewis for a declaratory judgment invalidating three ordinances passed by the City of Austin making changes in its zoning ordinances.

Trial was non-jury. Judgment was rendered declaring the ordinances attacked to be valid and denying appellants any relief, the Court reciting "that plaintiffs have failed to prove by a preponderance of the evidence that the enactment of" the ordinances by the City "has had or will have any effect upon plaintiffs' property."

The three ordinances in suit amended existing zoning ordinances so as to change the areas described from a classification of residential "A" to commercial "G.R." zoning.

Each of appellants owned residential property which, it was alleged, would suffer a diminution in value as a result of the enactment of one or more of such ordinances. On this issue the evidence was disputed and the trial judge made the finding, above noted, that no loss of value was proved. Appellants have no point questioning the validity of this finding. Their first point, however, is that the "Trial Court erred in holding (if it did so hold) that plaintiffs were under the burden of proving irreparable injury to their property as a resulting fact from the passage of the subject ordinances."

We believe that a discussion of this point would be academic because it does not

present a point of error which could be determinative of this appeal.

 The enactment of zoning laws is an exercise of the police powers of the State by the legislative branch of the government. The State of Texas has delegated some of this legislative authority to municipalities. Arts. 1011a–1011j, Vernon's Ann.Tex.Civ.St. The Legislature, of course, may put such restrictions on and provide the manner in which municipalities may exercise the delegation of this authority as it sees fit. See Smart v. Lloyd, Tex.Civ.App., 370 S.W.2d 245, Texarkana, n. w. h.

Our problem here is, as we see it, twofold, (1) to determine if the City has substantially tracked the statutes under which it derived authority to enact the ordinances in suit and (2) whether the notice provisions of Art. 1011f are constitutional.

The statute of primary concern here and the only one the partial validity of which is assailed is Art. 1011f which we quote, in part:

"Art. 1011f. Zoning commission

In order to avail itself of the powers conferred by this Act, such legislative body shall appoint a commission, to be known as the Zoning Commission, to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such Commission shall make a preliminary report and hold public hearings thereon before submitting its final report, and such legislative body shall not hold its public hearings or take action until it has received the final report of such Commission; provided, however, that any city or town, by ordinance, may provide for the holding of any public hearing of the legislative body, after published notice required by Section 4 of this Act, jointly with any public hearing required to be held by the Zoning Commission, but such legislative body shall not take action until it has received the final report of such Zoning Commission. Where a City Plan Commission already exists, it may be appointed as the Zoning Commission. Written notice of all public hearings before the Zoning Commission on proposed changes in classification shall be sent to owners of real property lying within two hundred (200) feet of the property on which the change in classification is proposed, such notice to be given, not less than ten (10) days before the date set for hearing, to all such owners who have rendered their said property for city taxes as the ownership appears on the last approved city tax roll. Such notice may be served by depositing the same, properly addressed and postage paid, in the city post office."

Sec. 4 referred to in the above statute, is Art. 1011d, which reads:

"Art. 1011d. Method of procedure

The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least 15 days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality."

Art. 1011e, provides, in part, that, "The provisions of the previous section relative to public hearing and official notice shall apply equally to all changes or amendments."

On the issue of constitutionality of the notice provisions of the above statutes, appellants cite authorities for the rule that notice to satisfy the requirements of due process must be "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections."

■ We hold that the notice provisions of the statutes referred to above are valid for two reasons. The first reason is that the enactment and amendment of zoning laws is legislative in character and due process of law does not require notice of such proceedings. The second reason is that the notice provisions of these statutes are constitutionally adequate even if notice is required.

Our first reason is sustained by these authorities. 66 C.J.S. Notice § 14, p. 652, Burke v. Board of Representatives of Stamford, 148 Conn. 33, 166 A.2d 849, 16A C.J.S. Constitutional Law § 569(5), p. 580, n. 20. Among the cases cited in this note is Willapoint Oysters v. Ewing, 174 F.2d 676, U.S. Court of Appeals, Ninth Circuit, cert. denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527, rehearing denied, where the Court stated, "However in legislation, or rule-making, there is no constitutional right to any hearing whatsoever." Cited to support this holding was the following language from an opinion by Justice Holmes, "Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."

In Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, the Court sustained the constitutionality of our zoning laws which

at that time provided only for notice by publication as prescribed in Arts. 1011d and 1011e, supra.

This type of notice in zoning matters has been upheld in many cases. See Annotation in 96 A.L.R.2d, p. 459.

■ It is true that the publication notice required by the statutes does not necessarily apply to hearings before the Zoning Commission and that the written notice provisions apply only to such hearing. We concede that the right to appear before the Zoning Commission is of great importance, and that we should preserve and protect it insofar as the Legislature has authorized or directed its preservation and protection. We consider this right to be a mere legislative right as distinguished from a constitutional right. The Legislature may have directed that notices of the public hearing before the Zoning Commission be sent to persons owning property in the area as disclosed by the deed records of the County or whose identity could be ascertained in any other reasonable manner. The point is that it has not done so, and it, the Legislature, was not required to provide for any notice of such hearing. We have no hesitancy in saying, however, that the Legislature has wisely, fairly and reasonably provided for a method of notice which places on property owners some measure of responsibility which he assumes when acquiring the status of an owner of real property in the City, that of rendering his property for taxation.

■ It is also true that the written notice provisions are not perfect in that when there is a change of ownership so that the last approved tax roll may not reflect the owner at the time written notice of the hearing are sent. Perfection is difficult of attainment. If this imperfection is to be remedied, it must be accomplished by the Legislature.[1] It is enough for us to deter-

---

1. See Ottinger v. Arenal Realty Co., 257 N.Y. 371, 178 N.E. 665, where the Court, Justice Cardozo writing, in a zoning case stated,

"Neighboring property owners, not being parties, derive no right to notice from the provisions of the (City) charter. Whatever right to notice belongs

mine that this inadequacy does not afford grounds for granting appellants the relief they seek. It would not benefit appellants if we held this notice provision invalid. It would, theoretically at least, harm him and those similarly situated for the reason that if some property owners within this limited area receive written notices of a hearing before the Zoning Commission which affects their property the more likelihood that all, including those who have not received such notice, will hear of it. Nor do we believe that appellants can complain that the Legislature has provided for an imperfect notice when it was not required to provide for any notice.

We overrule appellants' point that Art. 1011f is unconstitutional insofar as its provisions for notice are concerned.

We must now determine whether the notice provisions of Art. 1011f have been complied with in this case as to each appellant and as to each ordinance involved, for if not the ordinance enacted under such circumstances is void. The law in this respect has been recently stated by the Supreme Court in Bolton v. Sparks, 362 S.W.2d 946, as follows:

"The courts of this State have held ordinances and amendments to ordinances invalid where the express, mandatory provisions of our zoning statute have not been complied with. The steps directed to be taken for notice and hearing, when provided for in the law, are intended for the protection of the prop-

erty owner, and are his safeguards against the exercise of arbitrary power. Each act required is essential to the exercise of jurisdiction by the City Council, and each must be rigidly performed."

All the facts relating to notice were stipulated. Publication notices required by the statutes were duly given and no point is made regarding them.

None of appellants owned any property within 200' of the property made the subject of Ordinance No. 650610–A. They, therefore, did not fall within the written notice provisions of Art. 1011f, as to this ordinance.

Only appellants Lawton and Berryman owned property within 200' of the property made the subject of Ordinance 650304–C. Berryman purchased his property in September 1964; Lawton purchased his property in May 1964. Neither of these two appellants rendered his property for taxation, although they have paid their taxes.

The public hearing before the Zoning Commission held prior to the enactment of this zoning ordinance was held February 2, 1965. Neither Berryman nor Lawton received written notice of this hearing for the reason that not having rendered their properties for taxation their names were not on the last approved tax rolls. They had no actual notice of such hearing. It does appear that the predecessors in title of Lawton and Berryman, Triple C Inc., did receive notice of such hearing, such

---

to persons other than the parties * * * comes to them either from the rules of the board itself or from the general zoning resolution."
and:
"Public, in any event, the hearing is, even if better forms of publicity could be invented by one bent upon reform. The law does not guarantee the efficacy of its processes to carry notice home to every interested mind. This is so even where constitutional rights would be infringed if publication were omitted. It is so, a fortiori, where publication is an act of grace. Land may be condemned and property inter-

ests divested, though the expropriate owner, residing in another state, has never seen the summons that warns him to defend his rights. Still more flexible are the forms available where nothing would be divested nor any right infringed if the proceeding were conducted without notice from opening to close. * * * The zoning resolution might be repealed overnight without violating the Constitution. Whatever right to preliminary notice belongs to the public or to any members of the public has its origin in the (zoning) resolution and is measured by its terms."

predecessor being shown as the owner on the last approved City tax roll, being the tax roll reflecting ownership of property as of January 1, 1964. All property owners as shown by this roll owning property within 200′ of the property affected by this ordinance were duly mailed notices as required by Art. 1011f.

Appellant Dolifka purchased property in October 1962 which lay within 200′ of the property the subject of Ordinance 631017–D. This property was not on the City approved tax roll until September 1964. Mr. Dolifka first rendered this property for taxes in 1965.

Written notices as required by Art. 1011f were duly mailed giving notice of the public hearing before the Zoning Commission of the proposed changes, later reflected in such Ordinance, such hearing to be held September 17, 1963.

Appellant Dolifka did not receive written notice of such hearing and had no actual notice of it.

It is obvious that, on the face of things, the City has literally complied with all statutory provisions for notice of public hearings before the Zoning Commission and the City Council.

Appellants say, however, that, sub rosa, other matters were considered by the Zoning Commission when it recommended passage of Ordinance 631017–D. We copy appellants' statement under the points presenting this question:

"As originally submitted to the City, the property which was the subject matter of Ordinance No. 631017–D, consisted of two tracts of land shown as a shaded area on the map in the files of the Planning Commission. Plaintiff Dolifka lived across the street from one of these tracts. The minutes contained in the Planning Commission file reflect that the subject property was a portion of Royal Oak Estates, Section 8, and that 'the staff is concerned with the intersection question being resolved prior to any development of this site and feel that this zoning proposal should be considered in terms of an approved subdivision layout.' The files also reflect that 'the Commission felt this was proper zoning for the property, but they agree that it must be tied to a comprehensive street pattern as finally established by the subdivision proposing commercial sites at this location.'

In other words, the recommendation of the Planning Commission was conditioned on a comprehensive commercial zoning of Royal Oak Estates, Section 8, which property including the areas which were the subject of the two subsequent zoning ordinances passed in 1965.

The Planning Commission, by enlarging the scope of the initial ordinance, failed to follow the requirements of Article 1011f of Vernon's Civil Statutes in that notice was not sent to all persons within 200 feet, as shown by the City's tax rolls, for the entire commercial subdivision. It has been stipulated that notices were sent to all persons within 200 feet of the property shown in the application for the initial zoning ordinance. Apparently, the City felt it unnecessary to send notices to persons living within 200 feet of the entire commercial section (Royal Oak Estates, Section 8), and in failing to do so, the City failed to establish its jurisdiction over the subject matter of the initial ordinance.

One of the subdividers made plain the fact that the 1963 Planning Commission's meeting did not restrict the subject matter of the ordinance to the property described in the application. Witness this statement by Mr. Nash Phillips on cross-examination.

'Q At the time the ordinance affecting these three tracts here are considered by the Planning Commission, was your proposed subdivision of Royal Oaks Section 8 con-

sidered by the Planning Commission?

A I would have to say it was. They certainly considered the overall workability of the streets.

Q Was this whole subdivision supposed to be a commercial development—Section 8?

A Was the whole subdivision considered?

Q Yes, sir; as it is today.

A Was it proposed to be a commercial development?

Q Yes.

A Yes, sir.' "

Other testimony from this witness on this matter is:

"Q Would you explain to the court what is known by this: 'voted to recommend that the request of Nash Phillips, et al, for a change of zoning on a residential first height and area to GR General Retail Sixth Height and Area, be not located at 2111–2139 and 2126–2208 Wheless Lane, be granted to provide the comprehensive subdivision street plan for commercial use is approved.' Now, what are they talking about when they say this 'comprehensive subdivision's street plan for commercial use is approved?'

A They are talking about the street intersections.

Q They are not talking about Royal Oaks Estate, Section 8?

A No, sir.

* * * * * *

Q Mr. Phillips, the questions that I have asked you referring to the ordinance affecting the first three tracts of land, this is the first ordinance that was passed in 1963 is that correct? I believe that it was

October, 1963 that the City Council passed the first ordinance.

A Was that the date it was passed?

Q Yes.

A Now what was your question?

Q That was the ordinance that you were talking about when you testified at the hearing of the Planning Commission—you were not talking about the second or third ordinances.

A I would say it generally applied to the first ordinance—the working out of the street."

The area which appellants assert the Planning Commission considered and determined to recommend for commercial zoning in its public hearing in 1963 prior to adoption of Ordinance 631017–D is the same area which was included in the two subsequent Ordinances, 650304–C and 650610–A.

Art. 1011c, V.T.C.S., requires that zoning regulations be made "in accordance with a comprehensive plan and designed to lessen congestion in the streets * * * and to facilitate the adequate provision of transportation * * *" and to foster other public services and the general welfare.

Fairly interpreted, we believe the discussion before the Planning Commission was proper and in keeping with its duties under Art. 1011c.

If the matter is not free from doubt, and this is the most that appellants could, in our opinion, make of the matter, this doubt has been resolved against them by the trier of the facts, the trial judge.

■ We overrule appellants' points presenting this alleged impropriety of the Planning Commission.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.

PHILLIPS, J., recused himself and did not sit.